**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 9 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

AVA SAWYER,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 03-7014
(D.C. No. 01-CV-629-S)
(E.D. Okla.)

ORDER AND JUDGMENT *

Before **O'BRIEN** and **BALDOCK** , Circuit Judges, and **BRORBY** , Senior Circuit
Judge.

After examining the briefs and appellate records, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Ava Sawyer appeals the district court's affirmance of the decision by the Commissioner of Social Security denying her application for disability benefits and supplemental security income. Because the Commissioner's decision was supported by substantial evidence and no legal errors occurred, we affirm.

## Background

In July 1995, claimant sought emergency treatment for right-sided abdominal pain. She was diagnosed with entiritis and was given medication. Later that month, she was diagnosed with a small ovarian cyst. In August 1985, claimant was diagnosed with minimal diverticulosis of the lower left colon. CT scans of her stomach and abdominal organs were unremarkable.

On February 14, 1996, claimant injured her lower back at work. The workers' compensation carrier sent claimant to Dr. Wood, who diagnosed claimant with a lumbar sprain. Aplt's App. at 188. Claimant underwent physical therapy during March and April 1996, with significant improvement noted. *Id.* at 244. She was discharged from physical therapy on April 26, 1996. *Id.*

On May 14, 1996, claimant returned to Dr. Wood complaining of continued pain and right leg weakness. Examination revealed some loss of muscle tone in the hip flexors and adductors, with some decrease in muscle strength. *Id.* at 187. Because of the possibility of radiculopathy, Dr. Wood referred claimant to Dr. Duncan in June 1996.

-2-

In June 1996, Dr. Duncan's examination revealed symmetrical reflexes, and normal motor, sensory, and cerebellar exams. Claimant's range of motion in her lumbar spine was restricted, but she did not have a definitive positive straight leg raising test. *Id.* at 152. Dr. Duncan ordered a lumbar spine series of x-rays which showed unremarkable results. *Id.* at 151. Claimant's EMG did not reveal any abnormalities, although Dr. Duncan noted that the findings did "not entirely exclude a radiculopathy." *Id.* at 148. An MRI "didn't show dramatic changes," *id.* at 146, showing "[d]egenerative disc disease at L4/L5 and L5-S1 with minimal posterior disc protrusion. . . . No evidence of central canal stenosis or neural foraminal narrowing." *Id.* at 140. In July 1996, Dr. Duncan suggested physical therapy as he did not "see a specific indication for surgery." *Id.* at 146.

In August 1996, claimant received an epidural steroid injection at Valley View Regional Hospital. Discharge notes reported that claimant was in no apparent distress. *Id.* at 143. She underwent physical therapy from July through September 1996. Notes show that claimant's condition improved, and during September, she began canceling her appointments. *Id.* at 153-56. On September 13, 1996, Dr. Duncan opined that claimant could perform light duty without lifting more than fifteen pounds, and released her from his care. *Id.* at 145.

On October 3, 1996, claimant returned to Dr. Wood. Claimant reported that she had good days and bad days with her back, that standing for long periods caused pain, and that sitting for long periods caused stiffness. *Id.* at 187. Regarding Dr. Duncan's recommendation that she return to work on light duty, claimant felt that there was "no light duty she could perform in her job class." *Id.* at 187. Claimant saw Dr. Wood a last time on October 31, 1996. Dr. Wood diagnosed claimant with a lumbar strain that was improving slowly, and released her for light duty with very little lifting, and with the ability to alternate sitting, standing, and walking. *Id.* at 186. Dr. Wood advised that claimant should be limited to thirty hours of work for the first month. *Id.* Although claimant was supposed to make another appointment with Dr. Wood in three weeks, she failed to do so.

On November 5, 1996, claimant was examined by Dr. Hastings of Professional Medical Services. He reported claimant's complaints of pain and stiffness in the low back that worsened with bending, stooping, lifting, or twisting. *Id.* at 179. Claimant also complained of pain radiating into the legs bilaterally, with the right leg worse than the left, and pain when getting in and out of chairs. Physical examination showed spasm in claimant's paravertebral muscles from T-10 to T-12 bilaterally and in her lumbosacral region. *Id.* at 180. Claimant had reduced range of motion and positive straight leg raising bilaterally.

She had deep tendon reflexes of 2/4, with normal strength and a normal gait. *Id.* The physician found claimant temporarily totally disabled from her usual occupation, and recommended that she be evaluated by an orthopedic surgeon. *Id.*

Claimant was re-examined by Dr. Hastings on January 29, 1997. Although claimant still had pain in the paravertebral muscles and lumbosacral area bilaterally, Dr. Hastings did not note any muscle spasm. *Id.* at 183. Claimant's range of motion was limited to twenty-five degrees of flexion, ten degrees of extension, ten degrees lateral flexion bilaterally, and straight leg raising at thirty degrees bilaterally. *Id.* Dr. Hastings rated claimant as having sustained a permanent partial impairment of thirty-two percent to the whole person. *Id.* He recommended that claimant "undergo vocational rehabilitation in order to learn a more sedentary type of employment." *Id.* at 184. Claimant's workers' compensation case was closed in April 1997, at which time she received a $9,000 settlement. *Id.* at 58.

The record also contains the treatment records of claimant's family physician, Dr. Carpenter, from 1991 through 1999. *Id.* at 190-94, 235. Although Dr. Carpenter's records show a long history of treating claimant with antidepressants, sleep aids, and for gynecological needs, there are no references to claimant's back and leg condition until November 1998, where a single note reports that claimant had good days and bad days with her back. *Id.* at 235.

Claimant filed her application for benefits in May 1998, alleging she became unable to work on February 14, 1996, due to bulging discs in her back, migraine headaches, hypoglycemia, tunnel vision, ulcers, and nervousness. Claimant's insured status expired on September 30, 1997.

On August 4, 1998, claimant underwent a mental status examination with Dr. Mynatt, who diagnosed claimant as having a major depressive episode, which was moderate and recurring, and unresolved post traumatic stress disorder. *Id.* at 198. He opined that claimant was functioning at a level of 60, which meant she either had moderate physical symptoms of depression or moderate difficulty in social, occupational, or school functioning. *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

On August 15, 1998, claimant was examined by consulting physician McClimans. Claimant reported headaches; no visual disorders other than those corrected by glasses; occasional symptoms of a spastic colon, but no ulcers or other abdominal conditions; weakness and paresthesias in her right leg; and depression and nervousness. Aplt's App. at 201-02. Physical examination showed decreased sensation on the right leg, back pain upon palpitation but no spasms; slight decrease in lumbar motion, but full range of motion in all extremities; slight decrease in right leg strength; normal gait; and positive right leg raising in both the seated and supine positions. *Id.* at 202-03. Dr. McClimans

diagnosed claimant with chronic low back pain with radiculopathy of the right leg, and noted her history of other medical conditions. *Id.* at 203. His range of motion evaluation showed that other than a slight restriction in claimant's back extension and flexion, she had normal range of motion, and she experienced no pain during the evaluation. *Id.* at 204-06.

After claimant's application was denied at the first and second administrative levels, family physician Carpenter submitted an evaluation of claimant's residual functional capabilities in March 1999. Dr. Carpenter opined that claimant could not lift more than ten pounds, could only stand and walk for two hours total out of an eight-hour day, and could stand and walk continuously for an hour and fifteen minutes. *Id.* at 233. She opined that claimant could sit continuously for an hour, for a total of three hours out of the eight-hour day, and that claimant's ability to push and pull controls was limited. *Id.* She also opined that claimant was limited in her abilities to climb, balance, stoop, kneel, crouch, crawl, and reach, and that claimant had environmental restrictions. *Id.* at 234.

## Discussion

On April 7, 1999, claimant participated in a hearing before an administrative law judge (ALJ). Claimant was represented by counsel. On June 23, 1999, the ALJ issued his decision, finding that claimant was not disabled before her insured status expired in September 1997, and that she had not become

disabled thereafter. Although she could not return to her former employment, the ALJ found that claimant retained the ability to perform sedentary work. The Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. The district court affirmed.

We review the Commissioner's decision to determine only whether it is supported by substantial evidence and whether legal errors occurred. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (quotation omitted). We may not reweigh the evidence or substitute our judgment for that of the agency. *Id.*

Claimant argues that the ALJ erred in not giving controlling weight to Dr. Carpenter's opinion of her abilities and that the ALJ's finding that claimant could perform sedentary work was contrary to the record. Claimant also argues that the ALJ erred in concluding that her depression was not a severe impairment.

A treating physician's opinion is to be given controlling weight when it is well-supported by clinical evidence and is not inconsistent with the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Here, the ALJ refused to give controlling weight to Dr. Carpenter's assessment of claimant's abilities because it was not supported by clinical evidence and it was contrary to

-8-

the medical record. Noting the limited back treatment provided by Dr. Carpenter and her cursory treatment notes, the ALJ refused to give any weight to the family physician's limitation on claimant's ability to sit because it was totally unsupported by any clinical findings and was contrary to the record, including Dr. Carpenter's own notes. Aplt's App. at 22. As the ALJ considered the appropriate factors and gave specific, legitimate reasons for rejecting Dr. Carpenter's opinion, no legal error occurred. *See id.* at 1301. Moreover, the ALJ's conclusion that claimant can perform sedentary work is well-supported by the findings and opinions of the doctors who treated claimant's back in 1996 and 1997.

With regard to claimant's mental condition, the ALJ agreed that claimant suffered from depression, but found that her depression was not severe enough to affect her ability to work. This finding was based on the opinion of agency medical consultants who reviewed claimant's file. To support his finding that claimant's depression was not severe, the ALJ noted her lack of treatment with a mental health professional; her activities showing that she had the ability to interact with others and to concentrate and stay on task; and the absence of episodes of decompensation. *See* Aplt's App. at 23-24. The ALJ rejected consulting psychiatrist Mynatt's opinion based on the paucity of his underlying

findings.  *Id.* at 23.  Because the ALJ's factual finding regarding the severity of claimant's depression is supported by substantial evidence, it must be affirmed.

The judgment of the district court is AFFIRMED.


Entered for the Court


Bobby R. Baldock
Circuit Judge